# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JARROD EUGENE VEILLEUX,<br><br>Defendant. | CR 26-16-BU-WWM<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS |

Before the Court is Defendant Jarrod Eugene Veilleux's ("Mr. Veilleux") Motion to Suppress Evidence and Request for a *Franks* hearing ("Motion").[1] (Doc. 23). The Court convened a hearing on the Motion on July 6, 2026. Mr. Veilleux is charged with conspiring to distribute and to possess with the intent to distribute fentanyl, as well as attempted possession with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Doc. 2). The charges arise from a controlled delivery that led Montana Highway Patrol ("MHP") Troopers to stop the vehicle in which Mr. Veilleux was a passenger. (Doc. 23 at 3). Before the stop was over, officers seized Mr. Veilleux's cellular telephone without a warrant. *Id.*

---

[1] Although the Court noted that it would consider evidence on both issues, upon further examination, Mr. Veilleux did not make an adequate showing in the pre-hearing briefing to meet the threshold for a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) ("where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by [an] affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request").

Mr. Veilleux moves to suppress all evidence obtained after the conclusion of the traffic stop, arguing that the seizure and search of his phone violated his constitutional rights. (Doc. 24 at 5). Mr. Veilleux further argues that the search warrant application submitted subsequent to the phone's seizure, which allowed the eventual extraction of data from his device, omitted material information depriving the issuing judge of important context and the ability to evaluate probable cause. (*Id.*). For these reasons, he asserts that information obtained from the phones should be suppressed.[2] The United States opposes the Motion. In its briefing and at the evidentiary hearing held before the undersigned, the United States contends that MHP had probable cause to seize the cell phone and that exigent circumstances permitted retention of the cell phone while they awaited issuance of a search warrant. (Doc. 41 at 6-8). Mr. Veilleux responds that the government lacked particularized probable cause to seize the cell phone during the traffic stop. For the following reasons, the Court denies the Motion.

## I.    Factual Background

Mr. Veilleux was charged with conspiracy, and the facts pertaining to his co-conspirator, Nathan Chelini ("Mr. Chelini"), are relevant here. In the spring of 2024, law enforcement received information from probationer William Jobe

---

[2] While the Motion requests that the Court "[s]uppress all evidence obtained pursuant to the subsequent search warrant", including information obtained from Mr. Chelini's phone, the Court does not reach the question of whether Mr. Veilleux has standing to request that relief with respect to his co-defendant's phone given the ultimate disposition of the Motion.

("Mr. Jobe") and other sources that Mr. Chelini was distributing meth and fentanyl pills around Butte. Mr. Jobe informed law enforcement officers that Mr. Chelini was involved in trafficking "pounds of methamphetamine, counterfeit Oxycodone (fentanyl) pills, guns, and other dangerous drugs." *Id*. Mr. Jobe also told law enforcement Mr. Chelini's first name and address. *Id.*

Mr. Jobe was providing this information to law enforcement while facing his own legal troubles related to drugs and seeking favorable treatment in exchange. In July 2024, Mr. Jobe informed members of the Montana Division of Criminal Investigation ("DCI") that he had been contacted by Mr. Veilleux to distribute drugs. Mr. Jobe showed the officers Facebook messages from "Jarrod" which corroborated Mr. Jobe's statements. DCI officers searched Facebook for Jarrod and found Mr. Veilleux's profile, which had the same picture as seen in the messages.

In the predawn hours of the next morning, Mr. Jobe bought drugs from "Jarrod," which conflicted with the directions provided to him by DCI. Mr. Jobe texted DCI Agent Thomas Slease, seeking to meet. At the meeting, Mr. Jobe informed Slease and other officers that he had received about 300 grams of meth and 800 fentanyl pills from Mr. Veilleux to distribute. The DCI officers admonished Mr. Jobe, advising him to tell Mr. Veilleux that the drugs were either stolen or lost and that engaging in efforts to obtain drugs without permission from

DCI could result in his arrest.  Later in the same month, Agent Slease, based in Butte, was contacted by Sergeant Matt Reighard, an officer in the Missouri River Drug Task Force ("MRDTF"), which operates primarily in Bozeman and Helena, who informed him that MRDTF learned Mr. Veilleux was distributing drugs in the Butte area.

On August 6, 2024, a U.S. Postal Inspector contacted Agent Slease and disclosed the identification of a suspicious package shipped from Arizona to 1715 Yale Avenue in Butte.[3]  A drug dog alerted to the presence of drugs in the package the next day, and law enforcement obtained a warrant to open the package.  It contained nearly twelve pounds of meth.  Officers replaced the drugs with reams of paper to approximate the original weight of the package and a tracking device. When law enforcement officers made a controlled delivery of the reconfigured package to the recipient's address on August 7th, an unknown female received the package, stored it in a bag, and then moved it to an area with brush by a nearby park.

DCI agents observed the female texting with a cell phone before leaving the Yale address.  DCI agents then surveilled the package for eight to ten hours. During this time, DCI agents observed a Nissan Titan driving slowly in the area

---

[3] A second parcel mailed at the same time by a person with the same name and address was delivered to the same address and addressee.  It contained 10,000 counterfeit Oxycodone (fentanyl) pills.  (Doc. 27-1 at 4).

where the female had left the package.  Officers observed the driver of the Nissan Titan on his cell phone.  Then the driver, later identified as Mr. Chelini, exited the vehicle and walked up to the package, but did not pick it up.  Mr. Chelini drove away after remaining in the area for approximately four hours.  The unknown female returned to the package, opened it, removed the reams of paper, and left.  By that point, DCI agents had lost sight of Mr. Chelini and the Nissan Titan.  Agent Slease asked other law enforcement officers in the area to locate and stop the Titan, identify its occupants, and seize their cell phones.  Approximately five minutes later, MHP Troopers stopped the Titan.  Agent Slease remained in continuous contact with MHP Troopers during the stop.  Mr. Chelini and Mr. Veilleux were its lone occupants and identified by the MHP Troopers, who communicated this to Agent Slease.  Upon stopping the vehicle, as directed, the MHP Troopers seized a TLC cell phone from Mr. Chelini and a Samsung cell phone from Mr. Veilleux, which were turned over to Agent Slease.  The phones were placed in airplane mode to minimize the risk of alterations to their data being done remotely.

The cell phones were not returned to Mr. Veilleux and Mr. Chelini.  Instead, Agent Slease applied for and received a search warrant for the cell phones on August 12, 2024.  In the search warrant application, Agent Slease stated:  "Jobe was providing information to Agent Slease in an effort to avoid legal issues of his

own. . . . and had provided other information regarding drug activity to Agent Slease that he had been able to corroborate and knew to be true." (Doc. 27-1 at 2). State District Court Judge Robert J. Whelan issued the search warrant in Butte on the same day. The cell phones were sent to the DCI lab to complete a brute-force unlock. Agent Slease testified that this is an approach where a program will run sequential passcode combinations repeatedly (i.e., 111111, 111112) until it eventually gets the correct combination. On April 16, 2025, the Butte Silver Bow Law Enforcement Department conducted an examination of the cell phones - 251 days after they were seized.

## II.    Legal Standard

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has repeatedly affirmed that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). Warrantless seizures of personal property are presumptively unreasonable unless supported by probable cause and a recognized exception to the warrant requirement. *Horton v. California*, 496 U.S. 128, 138 (1990) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971)).

To effectuate the Fourth Amendment's protections, defendants have the right to have any evidence secured by means of an unlawful search and seizure excluded from trial, upon motion and proof. *Simmons v. United States*, 390 U.S. 377, 389 (1968) (citing *Weeks v. United States*, 232 U.S. 383 (1914)); Fed. R. Crim. P. 12(b)(3)(C). Characterized as "fruit of the poisonous tree," evidence seized from an unlawful search or seizure is subject to exclusion unless it has been sufficiently "purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 485–88 (1963). However, only unreasonable searches and seizures are proscribed. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "[T]here is no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (internal quotation marks omitted) (quoting *Camara v. Municipal Ct.*, 387 U.S. 523, 534–35 (1967)). A defendant has the ultimate burden of proof on a Fourth Amendment-based motion to suppress. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005).

## III.    Discussion

Mr. Veilleux maintains that the warrantless seizure of his cellular telephone violated the Fourth Amendment, thereby requiring all evidence derived from the device be suppressed. (Doc. 24 at 5, 15). He further argues that Agent Slease's search warrant application failed to include material, essential information that

should have been disclosed before Judge Whelan's finding of probable cause for the search of Mr. Veilleux's phone, which undermines his authorization to search. (Doc. 24 at 15–22).

    A.    <u>The seizure of Mr. Veilleux's cell phone did not violate his Fourth Amendment rights</u>

Warrantless searches and seizures may be conducted under a number of exceptions, including exigent circumstances. *Missouri v. McNeely*, 569 U.S. 141, 148–49 (2013) ("officers may conduct a search without a warrant to prevent the imminent destruction of evidence."). "The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government." *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012) (citing *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)). When claiming exigent circumstances, the government must show that a reasonable person would believe that an urgent circumstance justified a warrantless search and that probable cause existed. *Jones v. City of Las Vegas*, 158 F.4th 1131, 1137 (9th Cir. 2026). Similarly, officers may search a vehicle when there is probable cause to believe that the vehicle contains evidence or contraband. *California v. Acevedo*, 500 U.S. 565, 580 (1991).

> 1.    *There was probable cause to seize evidence from the vehicle and its occupants*

Probable cause to conduct a search or seizure exists when an officer finds that the facts and circumstances are sufficient to justify a reasonable belief that the items sought will be found in the place searched.  *United States v. Johnson*, 256 F.3d 895, 905 (9th Cir. 2001) (en banc) (per curium); *United States v. Steinman*, 159 F.4th 550, 568 (9th Cir. 2025) (applying the probable cause standard to a seizure).  These facts must be specific and objective; the officer cannot rely on hunches.  *Johnson*, 256 F.3d at 905.

Mr. Veilleux contends that the seizure of his cell phone was unconstitutional because officers never observed him and had no basis to believe that he or the cell phone were linked to a particular crime at the time it was seized.  In written reports from Troopers Kayce Milligan Houston and Gamal Selim, they state that they were directed to seize "any cell phones" without any limitations or upon certain conditions based upon who was in the car and who possessed cell phones.  (Docs. 24-1; 24-2).  Mr. Veilleux argues that such a non-particularized directive[4] lacks probable cause and, therefore, it cannot sustain a warrantless seizure.

---

[4] Agent Slease testified he did not instruct the MHP Troopers to seize cell phones until Mr. Veilleux had been positively identified.  Agent Slease also testified that he and the MHP Troopers had a long working relationship and, even if he had instructed them to seize any cell phones from the outset, they understood that the cell phones would not be collected into evidence until the officers were directed to do so.

The United States makes several arguments to support its position that probable cause existed at the time of the stop. It claims that law enforcement was aware of Mr. Veilleux's involvement in drug trafficking through Mr. Jobe and MRDTF. Further, the temporal proximity of the stop to the controlled delivery and the knowledge that the drugs had been removed, coupled with the driver of the Nissan Titan's surveillance of the package, created a high likelihood that anyone in the vehicle was involved in the drug trafficking enterprise. Lastly, Agent Slease testified that it is common for the "target" of a controlled delivery to remain some distance away while the package is retrieved by someone else. The United States argues that these factors are sufficient to create probable cause for the seizure. The contemporaneous written reports of the MHP Troopers who seized the phones state that Agent Slease told them to seize the phones of any occupant of the Titan before knowing who was in the car.

In reviewing the parties' arguments, this Court concludes that the MHP Troopers had probable cause for the seizure at the time of the stop. The DCI Agents had conducted extensive surveillance of the drop site and witnessed Mr. Chelini and the unknown female interact with the package. They also saw Mr. Chelini speak on his cell phone and get into and out of the Titan. This occurred over the course of several hours. Mr. Chelini and Mr. Veilleux were already known to law enforcement as being involved in drug distribution. Within

five minutes of Mr. Chelini exiting the area in the Titan, he was stopped by the MHP Troopers -- now with Mr. Veilleux in the passenger seat.

Based on these facts, this Court concludes that MHP Troopers had a reasonable belief based on the facts and circumstances that Mr. Chelini and collaborators were attempting to collect the intercepted drugs. Anyone located in the car within such a brief lapse in time since the attempted collection of the package and the determination that it did not contain drugs would likely be involved in the drug distribution enterprise tied to the drugs mailed to 1715 Yale Avenue. This is consistent with holdings that occupancy of a vehicle believed to be involved in drug distribution is among the factors that may justify search and seizure. *See United States v. Cottman*, 497 F. Supp. 2d 598, 604 (D. Del. 2007).

Agent Slease testified that DCI had a strong suspicion that Mr. Veilleux was involved with the intercepted package, as he was among the only distributors known to law enforcement capable of distributing drugs at that level. "Where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all." *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) (cleaned up) (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983)).

Investigatory stops may be conducted if the officer has "reasonable suspicion that criminal activity may be afoot." *United States v. Magallon-Lopez*, 817 F.3d 671, 674 (9th Cir. 2016) (quoting *United States v. Arvizu*, 534 U.S. 266,

11

273 (2002)).  Reasonable suspicion is created by a combination of facts and reasonable inferences that the person detained is engaged in criminal activity. *United States v. Lopez*-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). When an officer is directed by an investigating officer to conduct a stop, the collective knowledge of law enforcement officers is imputed for purposes of the stop.  *United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007) (declining to require that an investigating officer provide the officer conducting the stop a factual basis for the stop).  The state bears the burden to show the seizure was based on reasonable suspicion and reasonably limited for purposes of investigative seizure.  *Florida v. Royer*, 460 U.S. 491, 500 (1983).  Agent Slease asked the MHP Troopers to stop the car and to seize all cell phones.  DCI Agents' knowledge was imputed to the MHP Troopers when they stopped the Nissan Titan.  In stopping the car, the MHP Troopers are treated as though they knew that the Nissan Titan had just left the site of a controlled delivery, where it had lingered for several hours, and where agents had witnessed people interacting with the controlled package and communicating on their cell phones.

Probable cause exists if there is a likelihood that the place searched will have evidence of a crime under the totality of the circumstances.  *United States v. Faagai*, 869 F.3d 1145, 1150 (9th Cir. 2017).  A totality of the circumstances requires only "a 'fair probability' that the evidence will be found." *Dougherty v.*

12

*City of Covina*, 654 F.3d 892, 897–98 (9th Cir. 2011) (quoting *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007)).  Fair probability can include reasonable inferences.  *Kelley*, 482 F.3d at 1050.

DCI Agents had determined that the Nissan Titan was likely involved in the controlled buy.  Mr. Chelini had been observed interacting with the package, driving the vehicle, and speaking on his cell phone for the majority of the time that he was in the area.  (Doc. 27-1 at 3–4).  Mr. Veilleux's identity was confirmed quickly during the stop and relayed to Agent Slease.  Based on this information and reasonable inferences, there was probable cause under the totality of the circumstances to suspect that the cell phones located in the Nissan Titan and in the possession of Mr. Veilleux and Mr. Chelini were likely to contain evidence of drug distribution.  Accordingly, probable cause existed.

> 2.    *Exigent circumstances justified the immediate seizure of cell phones in the possession of the vehicle's occupants*

Turning to the question of whether any exceptions permitted the seizure without a warrant, the Court must first acknowledge that cell phones are entitled to a high degree of protection.  *Riley v. California*, 573 U.S. 373, 403 (2014).  The government must demonstrate that the warrantless seizure was justified.  *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984).

Seizure is often necessary to prevent the destruction of evidence while officers seek a warrant to conduct a search of a cell phone's contents through

13

judicial process.  *Id.* at 388; *United States v. Meyer*, 19 F.4th 1028, 1033 (8th Cir. 2021) ("[K]nowing that data can be deleted at the touch of a button, the agents decided that they needed to act fast.").  The privacy interests implicated by the seizure are minimized when the phone is locked and in airplane mode during the temporary seizure. *United States v. Powell*, 2025 WL 853250, at *1 (9th Cir. Mar. 19, 2025) (unpublished).  "[A] temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time" is not unlawful. *Illinois v. McArthur*, 531 U.S. 326, 334 (2001).  Even when a person is handcuffed, it does not eliminate the risk that evidence related to the phone may be destroyed. *United States v. Coma*, 2024 WL 3887123, *26 (D. Alaska).

Agent Slease testified that it could take mere moments for evidence on a cell phone to be destroyed by either physically destroying the phone or deleting the information within.  This is particularly problematic in drug distribution investigations, where Agent Slease testified that cell phones almost universally contain evidence of illegal drug transactions.  Agent Slease testified that in controlled delivery cases, cell phones will often have evidence that the suspect was monitoring the tracking number of the package.

This Court finds that these circumstances create particularly heightened exigent circumstances.  Suspects seized during a controlled delivery will likely

have evidence of the crime on their cell phones, which could be quickly destroyed.

Other courts examining this issue have found that immediate seizure of all cell

phones in drug trafficking cases is routinely necessary.  *United States v. Hutchins*,

2025 WL 542321, at \*8-9 (W.D. Ken. Jan. 29, 2025); *United States v. Darden*, 353

F. Supp. 3d 697, 719 (M.D. Tenn. 2018) (compiling cases identifying cell phones

as essential tools of the drug trade that will be immediately apparent to police as

evidence).

An officer stopping a vehicle seizes all occupants, including the passengers,

who are lawfully detained.  *United States v. Chang*, 999 F. 1059, 1059–1067

(7th Cir. 2021).  Additional intrusions based on reasonable suspicion from the time

of the stop constitute minimum additional intrusions on the passenger's rights.

*Arizona v. Johnson*, 555 U.S. 323, 330-32 (2009).  The combined effect of these

factors means that the immediate, warrantless seizure of all cell phones present

during a stop on reasonable suspicion of drug distribution may be justified to

prevent the destruction of evidence.

Here, the immediate seizure was necessary to prevent the destruction of

evidence.  DCI Agents had observed both Mr. Chelini and the unidentified female

utilizing cell phones while monitoring the package after the controlled delivery.

That, combined with the common knowledge of law enforcement -- in illegal drug

distribution generally and with respect to the package delivered to the Yale Avenue

15

address specifically -- that cell phones are an essential tool of drug distribution, justified immediate seizure to prevent destruction of potential evidence. After Mr. Veilleux was identified, DCI's knowledge of his involvement allowed continued retention of the cell phones pending issuance of the search warrant. Mr. Veilleux contends that exigent circumstances did not exist because "DCI did not send the phones for forensic review until 251 days after the seizure." (Doc. 24, at 15). This Court finds this contention without merit for two reasons. First, the assertion is mistaken. While the forensic analysis was not commenced until April 15, 2025, the cell phone was first sent to the DCI lab to complete a brute force unlock. Agent Slease testified that it took months to complete the unlocking process, which has been noted by other courts. *See United States v. Casutt*, 2022 WL 562946, at *2 (D. Nev.). Agent Slease stated that the phone was taken to the DCI lab when the warrant was obtained. Necessary delay in accessing the phone was attributable to navigating the technology and not unreasonable.

Second, unreasonable delay is determined based on the time it takes the officer to obtain the warrant, not the time it takes to process evidence. *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). Here, it took Agent Slease six days to obtain a warrant, considered reasonable in other cases involving cell phones under similar facts. *Powell*, 2025 WL 853250, at *1 ("Even if the government could have moved faster to obtain a search warrant, the government is

not required to pursue the least intrusive course of action.") (internal citations omitted) (quoting *Sullivan*, 797 F.3d at 634). The warrant was issued before DCI agents attempted to access Mr. Veilleux's cell phone. *See Riley*, 573 U.S. at 402 (requiring that a warrant is generally required before information on a cell phone is accessed but recognizing that the cell phone may be seized prior). Accordingly, the delay was reasonable and does not undermine the Government's claim of exigent circumstances.

Even were the Court to find that exigent circumstances did not apply, the search of the automobile and containers therein fell within the automobile exception. *United States v. Ross*, 456 U.S. 798, 806–20 (1982) (recognizing the historic warrant exception when searching means of conveyance and their containers for illicit contraband). "[P]robable cause *alone* suffices to justify a warrantless search of a vehicle . . . as long as the scope of the search is reasonable." *United States v. Bagley*, 772 F.2d 482, 491 (9th Cir. 1985) (citing *California v. Carney*, 471 U.S. 386 (1985)). This exception applies to seizures as well. *Steinman*, 159 F.4th at 568.

The MHP Troopers stopped the Nissan Titan based on probable cause that it was being used in drug distribution. As part of that stop, the Troopers temporarily seized cell phones to preserve the evidence that they were likely to contain. Following identification of Mr. Veilleux, the DCI Agents maintained the phones

17

while they applied for a warrant in reasonable time.  Under these facts, the seizure complied with the Constitution.

        B.      <u>The search warrant was based on probable cause</u>

Mr. Veilleux contends that the affidavit submitted to obtain the search warrant had material omissions that, when considered as a whole, undermine Judge Whelan's finding of probable cause.  In particular, Mr. Veilleux contends that the affidavit insufficiently disclosed Mr. Jobe's drug use, probationary status, and lack of supervision.  In addition, Mr. Veilleux represents, "the affidavit failed to identify any communications concerning the controlled-delivery operation, any phone number associated with Mr. Veilleux, any subscriber information, or any contemporaneous observations linking Mr. Veilleux's Samsung phone to the package investigation."  (Reply at 5-6).  Lastly, Mr. Veilleux argued at the hearing that the affidavit omitted the fact that surveillance of Mr. Veilleux's home in July 2024 did not reveal criminal activity.

"When officers have obtained a warrant, as they did here, a search's legality will thus depend on whether a magistrate has properly found probable cause to support a particularly described search.  '[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Chatrie v. United States*, 609 U.S. __, 146 S. Ct. 2193, 2215 (2026) (quoting *Illinois v. Gates*, 462

U.S. 213, 232 (1983)).  The warrant in this case sought to access all data related criminal activity on the cell phones, including but not limited to:

- Global or regional navigation satellite system data, including data from the Global Positioning System (GPS), Global Navigation Satellite System (GLONASS), BeiDou Navigation Satellite System (BDS), and similar systems;
- Latitude and longitude data;
- Location history,
- IP addresses;
- Activity history or logs;
- Address book or calendar data;
- Contact forwarding data;
- Photographs, audio or video files;
- Metadata;
- Email messages and attachments;
- Documents or other text-based files;
- Timeline history;
- Public profiles;
- Login history;
- Browsing or search history;
- Visited websites;
- Text messages (SMS);
- Media messages (MMS);
- Instant messages;
- Privacy settings;
- Account information, including any linked financial or credit card accounts; and
- Any data on a linked social media or communication account or application.

(Doc. 27-1 at 1-2).  In support, Agent Slease provided a factual recitation of the investigation and seizure, including the information acquired from Mr. Jobe.

(Doc. 27-1 at 2-4).  Agent Slease also described his knowledge and training that

informed his belief that evidence of criminal activity would likely be found on the phones. (Doc. 27-1 at 4-7).

The Ninth Circuit has affirmed suppression orders when the officer fails to fully disclose the criminal history of an informant. *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). The disclosure of past crimes is focused on the credibility of the witness, particularly the probability that their statements are truthful. *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997). Crimes of dishonesty are particularly relevant. *Id.* at 160. However, the affiant may provide a general description of relevant criminal history, and even undisclosed crimes of dishonesty may be excused if there is other extrinsic evidence to support the informant's credibility. *Reeves*, 210 F.3d at 1046.

This Court finds that the affidavit adequately discloses the criminal history of Mr. Jobe. The affidavit states, "Jobe was providing information to Agent Slease in an effort to avoid legal issues of his own. Jobe had previously admitted his involvement in drug distribution to Agent Slease." (Doc. 27-1 at 2). Mr. Jobe's undisclosed probationary status and drug use are not crimes concerning his credibility or honesty and are generally encapsulated by the brief background provided. While the affidavit does not explicitly state that Mr. Jobe engaged in unauthorized illegal acts when he obtained drugs from Mr. Veilleux, the affidavit does not indicate that Mr. Jobe was acting at the direction of DCI. Additionally,

20

the affidavit expressly states that Agent Slease was unable to contact Mr. Jobe prior to him acquiring the drugs.  (Doc. 27-1 at 3).

Mr. Veilleux's argument that the affidavit should have disclosed the July 2024 surveillance of his home is similarly immaterial.  Agent Slease testified that the surveillance consisted of occasionally driving by the house to collect information which occurs in nearly every investigation.  Affidavits need not include every step in an investigation, whether or not it is material, or every piece of evidence not found.  The affidavit should describe the general contours of the investigation and adequately disclose material information that undermines a finding of probable cause.  The failure to observe active crime during infrequent drive-by surveillance is not material.

Even if this Court found that the affidavit materially omitted this information, it would be offset by the considerable extrinsic evidence of Mr. Jobe's credibility.  Agent Slease testified that Mr. Jobe is a consistently reliable informant.  Additionally, Mr. Jobe inculpated himself by bringing illegally obtained drugs to the DCI.  "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility -- sufficient at least to support a finding of probable cause to search."  *United States v. Harris*, 403 U.S. 573, 583 (1971).  In light of Mr. Jobe's

21

Case 2:26-cr-00016-WWM   Document 65   Filed 08/07/26   Page 22 of 24

consistent extrinsic history of credibility and the inculpatory nature of his information, the omission of specific or unequivocal statements in the affidavit would be offset.

Mr. Veilleux's arguments ignore a more glaring issue:  even striking the portions related to Mr. Jobe, the affidavit easily contained sufficient information for Judge Whelen to find probable cause.  The affidavit recounts that Agent Slease met with Sergent Reighard in July 2024, who informed Agent Slease that an individual had identified Mr. Veilleux as a distributer of dangerous drugs.  (Doc. 27-1 at 3).  On August 12th, Agent Slease learned that the Organized Crime Drug Enforcement Task Force in Washington state had obtained photos of Mr. Veilleux mailing packages to an address in Phoenix, Arizona known to be associated with drug distribution.  (Doc. 27-1 at 4).  Coupled with Mr. Veilleux's presence in the Nissan Titan within five minutes of its departure from the controlled delivery, there is a sufficient independent factual basis to find probable cause.

Similarly, Mr. Veilleux's arguments that the warrant lacked specific information to justify searching the cell phone are not well taken.  The affidavit includes a recitation of officers' observations at the controlled delivery of Mr. Chelini and the unidentified female utilizing their phones in connection with suspected drug distribution.  In addition, it contains extensive assertions regarding the use of cell phones in drug distribution cases.  The nexus of criminal activity,

22

Mr. Veilleux's physical presence in the vicinity, the ubiquity of cell phones in drug distribution, and officers' information regarding Mr. Veilleux's involvement in drug distribution supports finding probable cause.

Having found that the omissions are immaterial and would be counterbalanced by extrinsic evidence of credibility, this Court finds that Mr. Veilleux is not entitled to a finding that the evidence obtained pursuant to the warrant should be suppressed.  The affidavit contains sufficient information to support a finding of probable cause to search Mr. Veilleux's cell phone. Accordingly, the Motion will be denied.

## IV.   Conclusion

The Fourth Amendment requires courts to balance citizens' interests in privacy with the needs of law enforcement.  The practices of those involved in drug distribution and the fragility of electronically stored evidence create circumstances in which officers must quickly secure devices likely containing evidence or risk losing it forever.

**IT IS HEREBY ORDERED** that the Motion is **DENIED**.

The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 7th day of August, 2026.

WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE